Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1329 | **DATE** | 6/12/2001 |
| **CASE TITLE** | Patricia A. Luna vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/29/2001 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment (Doc. No. 13-1) is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 13 2001 date docketed | |
| | Notified counsel by telephone. | | | 17 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | EO-7 FILED FOR DOCKETING | 6/12/2001 date mailed notice | |
| ETV | courtroom deputy's initials | 01 JUN 12 PM 3:47 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. LUNA, | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | No. 00 C 1329 |
| UNITED STATES OF AMERICA, Department of the Navy, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

DOCKETED
JUN 1 3 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia A. Luna has filed this action against Defendant United States of America, Department of the Navy, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2761 *et seq*. Plaintiff was injured while performing professional services at Defendant's Service School Command ("SSC") as an employee of Resource Consultants, Inc. (RCI) and has already received workers' compensation for her injuries. In this action, Plaintiff seeks to recover damages from the United States. Defendant seeks summary judgment on the grounds that, as a "borrowing employer," it is protected from any such lawsuit by the exclusive remedy provision of the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq*. For the reasons set forth below, Defendant's motion is denied.

## FACTUAL BACKGROUND

RCI is an international company that provides a variety of professional and technical services to both the federal government and the private sector. (Plaintiff's

12(N)(3)(b)[1] Statement of Facts ¶ 2.) RCI entered into a five-year contract with Defendant, whereby RCI employees provided administrative services in support of the students and staff at the SSC. (Gumbert Dep., at 19.) Under this contract, RCI provided a site manager and assistant site manager to oversee the other RCI employees at the SSC. (Wells Dep., at 20.) RCI also provided supervisors in charge of each of the training schools at the base (e.g., Diesel School, Engineering Corps School, Gun School, Advance Electric Training Course, Seamen Apprenticeship Training Division ("Seamenship ATD"), Communications Navigation Division) as well as employees, working under these supervisors, to provide administrative services. (*Id.* at 21-24.)

According to Elizabeth Gumbert, an employee of Defendant and one of the two administrators assigned to the RCI contract, RCI's contract with Defendant was a "firm, fixed price contract," wherein RCI was referred to as an "independent, non-personal service contractor." (Plaintiff's 12(N)(3)(b) Statement of Facts ("Plaintiff's Additional Facts") ¶ 3.) In a nonpersonal service contract, the contractor, here RCI, is responsible for supervising its own employees. (Wells Dep., at 39.) The contract between Defendant and RCI delineated the various roles and corresponding duties to be fulfilled by RCI employees. (Defendant's Rule 56.1 Statement of Material Facts to Which There is no Genuine Issue ("Defendant's Statement") ¶ 5.) RCI was responsible

---

[1] Plaintiff has labeled its statements of fact using references to the previous version of the court's Local Rules. While those rules have been amended, effective September 1, 1999, replacing Local Rule 12(M) and 12(N) with Local Rule 56.1, the court will disregard Plaintiff's oversight so as to be consistent with the record.

for paying its employees' wages, training them, and carrying workers' compensation insurance on them. (*Id.* ¶ 3; Plaintiff's Additional Facts ¶ 6.) Defendant provided RCI with work space and parking, but provision of the remainder of equipment and supplies (of which neither party has provided examples) was the responsibility of RCI. (Plaintiff's Additional Facts ¶ 9.) According to Jill Wells, the other administrator of the RCI contract, Defendant had no right to discipline or terminate RCI employees. (Plaintiff's Additional Facts ¶ 5.)

Plaintiff was an employee of RCI. (Defendant's 56.1 Statement ¶ 2.) At all times relevant to this case, she worked as a Senior Administrative Assistant in the Seamen ATD. (*Id.* ¶ 5; Wells Dep., at 25.) The approximately five RCI employees who worked in the Seamen ATD performed the various student/staff support functions set forth in Paragraphs 5.3.1 to 5.3.27 of RCI's contract with Defendant, such as assisting incoming students in filling out forms and making travel arrangements for those students scheduled to leave the SSC and attend another duty station. (Ex. 6 to Defendant's 56.1 Statement; Wells Dep., at 25.) Wells testified that Plaintiff acted as a liaison between the students and the personnel office, which was staffed by employees of Defendant. (Wells Dep., at 27.)

On December 23, 1997, Plaintiff fell, and was injured, while addressing a group of naval recruits. (Defendant's 56.1 Statement ¶ 6.) Because a large number of recruits were expected to attend the session, Defendant had changed the location from the classroom to the training area. (Ex. 9 to Defendant's 56.1 Statement.) Defendant points to its decision to change the venue of the training session as an example of its

3

control over Plaintiff's duties. (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, at 5-6.)

In December 1998, Plaintiff settled a workers' compensation claim for $20,706.40. (Defendant's 56.1 Statement ¶ 7.) Then, on March 3, 2000, Plaintiff brought this suit under the FTCA. (Complaint ¶ 10.) Plaintiff has not indicated whether, or to what extent, her damages exceed the $20,706.40 she has already recovered.

## DISCUSSION

The standards that govern the court's consideration of this motion are familiar: Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Defendant argues that it must be awarded summary judgment here because Plaintiff has already made use of her *exclusive* remedy under the Illinois Workers' Compensation Act (IWCA). See 820 ILCS 305/5(a). Section 305/5(a) of the IWCA states that:

> No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act . . . .

4

820 ILCS 305/5(a). The IWCA further provides that "where one employer loans an employee to another employer and the employee then gets injured, the loaning employer and the borrowing employer are jointly and severally liable for any benefits which the employee is due." *Wilhite v. Illinois Power Co.*, ___ F. Supp. 2d ___, No. 98-3293-CV, 2001 WL 359686, at *2 (C.D. Ill. Apr. 10, 2001) (citing 820 ILCS 305/1(a)(4)). The court must therefore determine whether Defendant qualifies as a "borrowing employer" and can thus seek refuge in the exclusive remedy provision of the IWCA.

In support of its argument that it is a "borrowing employer," Defendant directs the court to the Seventh Circuit's decision in *Belluomini v. United States*, 64 F.3d 299, 302 (7th Cir. 1995). In *Belluomini*, the plaintiff's husband, a Court Security Officer ("CSO") killed while on duty, was employed by General Security Services Corporation ("GSSC"). *Id.* at 301. The United States Marshals Service hired GSSC to supply CSOs to protect the federal judiciary. *Id.* In fact, between 80 and 85 percent of GSSC's business consisted of supplying CSOs to the government. *Id.* at 303. Pursuant to its contract with the Marshals Service, GSSC was obligated to pay CSOs their wages and provide workers' compensation insurance for them. *Id.*

The *Belluomini* court noted that Illinois law provides two different tests to determine whether a particular relationship constitutes borrowed employment. *Id.* at 302. The first, according to the court, comes from the following language in the IWCA:

> Where an employer operating under and subject to the provisions of this Act loans an employee to another such *employer* and such loaned employee sustains a compensable accidental injury in the employment of such *borrowing employer* and where such *borrowing employer* does not

provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several . . . . An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring, or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this Section.

820 ILCS 305/1(a)(4) (emphases added). The court apparently assumed from this language that if an entity qualified as a "loaning employer" under Section 305/1(a)(4), then the entity to which it "loaned" an employee automatically became a "borrowing employer." The court then explained that if the defendant is not, by extension, deemed a "borrowing employer" under the IWCA, it may nevertheless rely on a second test as a defense. This second test "focuses on the extent of control which the alleged borrowing employer has over the employee and inquires as to whether a contract existed between the employee and the borrowing employer." *Belluomini*, 64 F.3d at 302. The *Belluomini* court found that GSSC was a "loaning employer" and that the Marshals Service was consequently a "borrowing employer." Accordingly, the court affirmed summary judgment in favor of the government.[2]

---

[2] While basing its decision on the language of the IWCA, the *Belluomini* court also noted that the defendant would qualify as an employer under the second, or "right to control," test. The court found that the Marshals Service, and not GSSC, trained and deputized new CSOs, provided them with their badges and their weapons, had the responsibility for determining how security would be provided in the federal building, and retained the authority to discharge the CSOs. *Belluomini*, 64 F.3d at 303.

6

Since *Belluomini*, however, the Appellate Court of Illinois, without explicitly referencing *Belluomini*, has rendered two decisions which cause this court to question the assumption that an entity automatically becomes a "borrowing employer" whenever a Section 305/1(a)(4) "loaning employer" provides it with an employee. *See Chaney v. Yetter Mfg. Co.*, 315 Ill. App. 3d 823, 734 N.E.2d 1028 (4th Dist. 2000) (finding defendant to be a "borrowing employer" because it controlled the plaintiff's work); *Crespo v. Weber Stephen Prods. Co.*, 275 Ill. App. 3d 638, 656 N.E.2d 154 (1st Dist. 1995) (same). According to these courts, the definition of a "loaning employer," in Section 305/1(a)(4) of the IWCA "was not meant to establish or define who shall be a borrowing employer." *Chaney*, 315 Ill. App. 3d at 828, 734 N.E.2d at 1032 (citing *Crespo*, 275 Ill. App. 3d at 642, 656 N.E.2d at 157); instead, its mere purpose was to "relieve an employee from having to establish the factual basis of employment between the employee and the *loaning* employer." *Crespo*, 275 Ill. App. 3d at 642, 656 N.E.2d at 157 (emphasis added). The lesson gleaned from *Chaney* and *Crespo* is that, in order to determine the status of a defendant in this context, a court, under Illinois law, should "examine[] the traditional factors that define the loaned-employee and borrowing-employer relationship"–in effect, the second of the two tests discussed in *Belluomini*. *Chaney*, 315 Ill. App. 3d at 828, 734 N.E.2d at 1032 (citing *Crespo*, 275 Ill. App. 3d at 642, 656 N.E.2d at 157). It is to this examination that the court now turns.

Again, the second test discussed in *Belluomini* focused on the "extent of control which the alleged borrowing employer has over the employee and inquires as to

7

whether a contract existed between the employee and the borrowing employer." *Belluomini*, 64 F.3d at 302; *see also Chaney*, 315 Ill. App. 3d at 827, 734 N.E.2d 1031 (citing *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 347-48, 412 N.E.2d 477, 480-81 (1980)). Of the two, the primary factor is the "right to control." *See Crespo*, 275 Ill. App. 3d at 641, 656 N.E.2d at 156. Factors to consider when determining control are: the mode of payment, the character of the supervision of the work done, the manner and direction of the employee, and the right to discharge. *See Chaney*, 315 Ill. App. 3d at 827, 734 N.E.2d at 1031 (citing *Freeman v. Augustine's, Inc.*, 46 Ill. App. 3d 230, 234, 360 N.E.2d 1245, 1247-48 (5th Dist. 1977)).

Here, as distinguished from *Belluomini*, the evidence offered by Plaintiff creates a dispute concerning whether Defendant exercised sufficient "control" over Plaintiff so as to be deemed a "borrowing employer." According to the testimony of Gumbert and Wells: RCI paid Plaintiff's wages; RCI was responsible for supervising Plaintiff's work; and Defendant did not have the right to discipline, let alone discharge, Plaintiff. Moreover, taken in the light most favorable to Plaintiff, this same testimony demonstrates that Plaintiff did not have any explicit or implicit agreement to be subject to Defendant's authority. *See Wilhite*, 2001 WL 359686, at *4 ("A plaintiff's consent to the employer-employee relationship is shown from his acceptance of defendant's control and direction as to his work activities.") On this motion for summary judgment, Defendant has the burden of demonstrating that there are no disputes of material fact on the question of its status as a "borrowing employer." The

8

court concludes that Defendant has not met this burden.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 13-1) is denied.

ENTER:

Dated: June 12, 2001

REBECCA R. PALLMEYER
United States District Judge