# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1329 | DATE | 3/31/2004 |
| CASE TITLE | Patricia A. Luna vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Amended Memorandum Opinion and Order *nunc pro tunc* 1/14/04. Memorandum is amended only on the signature page to reflect the date of January 14, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices: 2
APR 0 1 2004 date docketed
docketing deputy initials
3/31/2004 date mailed notice

courtroom deputy's initials: ETV
mailing deputy initials: ETV

Document Number: 47

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. LUNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 00 C 1329 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Rebecca R. Pallmeyer |
| Department of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Patricia A. Luna filed this action seeking to recover damages against Defendant United States of America, Department of the Navy, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff was injured while performing professional services at Defendant's Service School Command ("SSC") as an employee of Resource Consultants, Inc. ("RCI") and received workers' compensation for her injuries. Defendant contended that, as a "borrowing employer," it was protected from any such lawsuit by the exclusive remedy provision of the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.* Plaintiff urged that the United States was not a borrowing employer under controlling law. The court denied the United States's motion for summary judgment on this issue, *Luna v. United States*, No. 00 C 1329, 2001 WL 664445 (N.D. Ill. June 13, 2001), and, following a bench trial, this court concluded that the evidence did not establish that the United States was a "borrowing employer" here. The court nevertheless entered judgment for Defendant on the ground that Plaintiff had not proven negligence. *Luna v. United States*, No. 00 C 1329, 2003 WL 21196227 (N.D. Ill. May 21, 2003).

Plaintiff now moves to alter or amend this court's judgment pursuant to Federal Rules of Civil Procedure 59 and 52. She contends that the parties understood that the "borrowing employer" issue was the only matter for the court to decide at the bench trial, and asks the court to re-open the proceedings in this case to permit her to present evidence regarding Defendant's alleged

47

liability. For the reasons explained here, the motion is granted.

## FACTUAL BACKGROUND

The court will assume the reader's familiarity with the court's earlier opinions but will review pertinent background information. RCI entered into a five-year contract with Defendant, under which RCI employees provided administrative services in support of the students and staff at the SSC, which is located at the Naval Training Center in Great Lakes, Illinois. (Gumbert Dep., at 19.) Under this contract, RCI provided supervisors in charge of each of the training schools at the base as well as employees, working under these supervisors, to provide administrative services. (Wells Dep., at 21-24.) At all times relevant to this case, Plaintiff, an employee of RCI, worked as a Senior Administrative Assistant in the Seamen Apprenticeship Training Division of the SSC. (Defendant's Rule 56.1 Statement of Material Facts to Which There is No Genuine Issue ("Def.'s 56.1") ¶¶ 2, 5; Wells Dep., at 25.)

On December 23, 1997, the day of her injury, Plaintiff was assigned to deliver a "departure brief," a speech to a group of Naval recruits scheduled to leave the training center. (Stoneking Dep., at 17.) Normally these briefings take place in a classroom, but because a large number of recruits were expected to attend the session that day (200 as opposed to the usual 50), Defendant changed the location from the classroom to the training area, or "trainer."[1] Plaintiff had never given a brief in the training area before. (*Id.* at 18.) She addressed the recruits from a platform 36 inches above the floor, constructed to resemble the deck of a Navy ship. At the edge of the "ship" was the "water," also described as a "moat." (Wells Dep., at 57.) Plaintiff described the room as filled with students who were sitting on the deck of the ship, leaving her little space to walk. (Testimony of Luna.) She made her way to the back of the room, but during the first few moments of her talk, Plaintiff stepped backward and fell off the platform into the moat. (Testimony of Luna.)

Robert Stoneking, a Division Functional Supervisor with RCI and Luna's immediate

---

[1] It is unclear who specifically ordered the move to the training area.

2

supervisor, testified that before the incident it had never occurred to him that there should be a rope line at the edge of the platform to prevent someone from stepping off of it. He stated,

> I thought anybody with any common sense walks out there and sees that drop-off, they know about it. And if they're anywhere close, they're not going to, even though there is no line, they're not going to back off and fall in there. Any reasonable–but I can't say for her, what she was thinking of. She got so wrapped up, involved in her thing that she just–and she told me later, 'they all said, "Mrs. Luna, look out."'

(Stoneking Dep., at 18-19.) Stoneking testified, further, that had there been a rope line at the edge of the platform to prevent people from stepping off, the accident might still have occurred if someone had stepped backward, as Plaintiff did, without looking. (Id. at 19.)

In December 1998, Plaintiff settled a workers' compensation claim for $20,706.40. On March 3, 2000, Plaintiff brought this suit under the Federal Tort Claims Act, requesting compensation in the amount of $150,000.00 for the injuries she sustained during the fall. (Trial Memo at 1; Complaint ¶ 10.)

## DISCUSSION

### 1. Standards for Motion to Alter or Amend Judgment

Under Rules 59(e) and 52(b), any substantive motion that challenges the findings of a district court must be served within ten days after the entry of a judgment. FED. R. CIV. P. 59(e), 52(b). Such a motion will be granted "if there exists 'a manifest error of law or fact,' so as to enable 'the court to correct its own errors and thus avoid unnecessary appellate procedures.'" *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999), quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Motions for reconsideration also serve "to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

On June 5, 2003, Plaintiff filed a motion to alter or amend this court's judgment. She asserts that the court erred by entering judgment in favor of Defendant when it concluded that she failed to meet her burden of demonstrating that Defendant owed her a duty of care and that Defendant's negligence caused her injury. (Plaintiff's Motion to Alter or Amend Order of May 21,

3

2003, Pursuant to Rule 59 and Rule 52 ("Pl.'s Motion") ¶ 4.) Specifically, Plaintiff claims that Defendant's liability was not at issue during the bench trial because the parties had previously agreed that liability was uncontested. (*Id.* ¶ 5.) She asserts that, had there not been such an agreement, she would have conducted expert discovery and presented evidence regarding Defendant's negligence. (*Id.* ¶ 7.) Plaintiff requests that this court either (1) find that Defendant did not contest liability and enter judgment in favor of Plaintiff, or (2) re-open the matter for the sole purpose of hearing expert testimony on the issue of liability. (*Id.* ¶ 4.)

## 2. Alleged Agreement Regarding Liability

According to Plaintiff, Assistant U.S. Attorney Ann Wallace ("Wallace") and Plaintiff's attorney David Kupets ("Kupets") held discussions for several months before the bench trial.[2] (*Id.* ¶ 5.) Based on these discussions, Plaintiff claims that the parties had an "agreement" that Defendant was not contesting its own negligence—that is, Defendant did not contest that it owed Plaintiff a duty of care, that it breached that duty, or that it was the proximate cause of Plaintiff's injuries. (*Id.* ¶¶ 5-6.) Plaintiff's primary evidence of this purported agreement is a February 10, 2003 letter from Kupets to Wallace, which stated in pertinent part:

> Enclosed you will find the deposition designations for those witnesses identified by the plaintiff. There is one exception. We designated Lt. Christian Wallis in our original designation. However, *it is my understanding that Patricia's fall and circumstances of her fall (including the condition of the trainer area) will not be contested for purposes of our bench trial, i.e., we are not disputing that the condition of the room was a cause of her injuries.* If that is true, his testimony does not add anything to the case. If my understanding is incorrect, please let me know as soon as possible, otherwise, we do withdraw Lt. Wallis as a witness.

(Ex. A to Pl.'s Motion, at 1) (emphasis supplied). The record does not indicate whether Defendant responded to this letter. Plaintiff claims that, but for Ms. Wallace's silence, Plaintiff's attorney would have taken depositions of certain Navy personnel, submitted testimony regarding the fall, and disclosed a Rule 26 expert who would have presented evidence of Defendant's liability, including

---

[2] The record does not specify any of the dates on which these alleged discussions took place.

4

its alleged violation of various building codes. (*Id.* ¶¶ 7, 10-11.) According to Plaintiff, this alleged agreement is evidenced by the brevity of the trial (one day) and by the fact that neither party spent any time at the trial addressing the issue of Defendant's liability. (*Id.*)

As additional evidence of the existence of an agreement between the parties, Plaintiff offers two versions of the "Trial Memo" which Plaintiff submitted to Defendant before the parties submitted the final document to the court. (Pl.'s Motion ¶ 8.) An individual not identified in the record added handwritten notes to Defendant's first draft of the memo. (*Id.*) The handwritten material included the following statement: "If expert testimony were presented, the expert would state to a reasonable degree of certainty that pursuant to the Suburban Official Building Code, Section 207(A)(8): That 36 inch guardrail shall be placed on porches, balconies, or raised floor surfaces located 30 inches or more from the floor or grade below." (Ex. B to Pl.'s Motion, at 2.) This handwritten material is absent from a later version of the memo. (Ex. C to Pl.'s Motion.) Plaintiff asserts that, "after a discussion between the attorneys, it was decided that it would not be necessary to put that information in the final draft since liability was not contested." (Pl.'s Motion ¶ 8.) Although, as described below, Defendant filed a brief in response to a court order, Defendant did not file a response specifically directed at Plaintiff's motion, and has not commented on Plaintiff's assertions concerning the existence or contents of this alleged agreement.

Whether or not these two drafts and Ms. Wallace's silence in response to the February 10, 2003 letter can be characterized as an enforceable agreement, the court concludes that Plaintiff and her attorney believed in good faith that Defendant was not contesting liability. Defendant's failure to address this agreement in its briefs opposing the instant motion is not dispositive but does bolster the inference that it was not prepared to deny liability at the bench trial. Nor has Defendant argued that it would be substantively prejudiced by an order granting this motion. The court concludes it is appropriate to re-open this litigation for the sole purpose of hearing evidence on the issue of liability.

5

3. **Evidence Regarding Defendant's Alleged Liability**

As the parties will have the opportunity to present evidence on this issue, this court need not determine at this juncture whether Defendant was in fact negligent. Because they have made certain arguments about the matter in their briefs, however, the court will briefly address the parties' arguments concerning the standard of care Defendant owed to Plaintiff. In its answer, Defendant admitted that it "owed a duty of reasonable care to entrants on the state of their premises." (Answer ¶ 11.) Plaintiff goes further, claiming that Defendant had both a duty to warn and a duty to guard against defective conditions on its property, such as "unguarded, unbarricaded floor openings and drop offs to prevent injury." (Pl.'s Motion ¶ 9.) She cites two building codes in support of this proposition. (Id.) The first is the 1981 Building Code ("Code") published by the Suburban Building Officials Conference ("SBOC"), a chapter of the Building Officials Conference Association ("BOCA"). (Id.) Section 207.A.8 of the Code states in relevant part, "Porches, balconies or raised floor surfaces located more than 30 inches above the floor or grade below shall have guardrails not less than 36 inches in height."[3] Plaintiff also cites the Restatement (Second) of Torts and several Illinois state cases to support the proposition that Defendant had a duty to guard against defective conditions on its property. (Pl.'s Motion ¶ 9.)

---

[3] Plaintiff also cites § 75-1 of the 1987 City of Chicago Building Code, which provides:

Guards to prevent persons from falling shall be provided as required in Sections 75-1.1 to 75-1.2, inclusive.
75-1.1. Guards shall be required at every point of danger including the following:
(a) At all edges of every floor, balcony, mezzanine or other space used or intended for human occupancy which is at a height of more than two feet above the floor, ground or pavement directly below.
. . .
(c) At all sides of every open areaway exceeding three feet in depth except the side providing access to a stairway.
75-1.2. Guard may be formed by walls, balustrades, grills or railings not less than three feet in height, by area gratings or by other approved devices.

As the SSC facility at issue in this case is located in Great Lakes, Illinois, the court concludes that Chicago's building code has no more relevance to the outcome of this case than any other city or state building code.

6

On August 8, 2003, this court ordered each party to submit briefs on the issue of whether submission of standards of the Code as exhibits would satisfy Plaintiff's burden of proving that Defendant breached the standard of care. (*See* Minute Order, 40-1.) In her brief on this issue, Plaintiff cites Illinois state law and the adoption by Illinois courts of the standards of care for landowners set forth in the Restatement Second of Torts. (Pl.'s Mem., at 2-4.) Specifically, she claims that Defendant should have realized that there existed a condition that posed an unreasonable risk of harm to invitees such as Plaintiff. (*Id.*)

Defendant's court-ordered brief does not address this assertion, which arguably exceeds the scope of the court's order in any event. Instead, Defendant contends that the court should not allow Plaintiff "two bites at the apple" by re-opening this litigation. (Defendant's Court-Ordered Brief Regarding One Post-Trial Issue Raised by Plaintiff ("Def.'s Mem."), at 2-4.) Specifically, Defendant points out that the Code was available to Plaintiff before the trial and that Plaintiff nevertheless failed to offer it into evidence or to raise this theory at trial. (*Id.*) Defendant therefore maintains that this court should not now admit the Code into evidence or permit Plaintiff to argue that Defendant was bound by the Code standards. (*Id.*) Significantly, as noted earlier, Defendant makes no mention of the February 10, 2003 letter which, according to Plaintiff, shows that the parties had agreed that they were not contesting liability for purposes of the bench trial.

Next, Plaintiff argues that this court should admit the Code into evidence to aid the court in determining the standard of care that Defendant owed Plaintiff. (Pl.'s Mem., at 6.)[4] Plaintiff notes that the Code purports to set forth rules and regulations "which are considered reasonable and are held in every instance to be minimum for the promotion of the public health, safety and general welfare." (Pl.'s Mem., at 4.) She cites § 207.A.8 of the Code, which mandates guardrails around any raised floor surface that is more than 30 inches above the grade below. (Pl.'s Mem.,

---

[4] In addition, Plaintiff again cites sections of the City of Chicago Building Code, which is of no special relevance to this litigation. (*Id.* at 4-5.)

7

at 5.)

Defendant responds that federal agencies are shielded from liability for failure to comply with building codes in federal building construction or alteration. (Def.'s Mem., at 4.) To support this assertion, Defendant cites 40 U.S.C. § 3312, which requires buildings constructed by the General Services Administration ("GSA") to comply with "one of the nationally recognized model building codes and with other applicable nationally recognized codes, including electrical codes, fire and life safety codes, and plumbing codes," 40 U.S.C. § 3312(b), but specifically provides that no action may be brought against the Federal Government "for failure to meet the requirements of subsection (b)." 40 U.S.C. § 3312(f).

Defendant also cites *Schuyler v. United States*, 987 F. Supp. 835 (S.D. Cal. 1997), in which a pedestrian was thrown over the guardrail of a three-story pedestrian ramp at a U.S. port of entry during a brawl. 987 F. Supp. at 837. The pedestrian sued the United States under the FTCA, claiming that the government was negligent in designing, constructing, and maintaining the pedestrian ramp. *Id.* The court held that 40 U.S.C. § 619(e) (the former citation for 40 U.S.C. § 3312(f)) shielded the government from liability for its failure to comply with building codes. *Id.* at 844. The court found that the statute "expresses a clear intent on the part of Congress to shield defendant from liability regarding decisions made with respect to the construction and modification of buildings by the GSA. As such, defendant cannot be liable for its decisions regarding the height of the guardrail." *Id.* at 845. Defendant concludes that it cannot be found liable regarding decisions made with respect to the design, construction and modification of federal buildings, including military installations. (Def.'s Mem., at 4.)[5]

Finally, Plaintiff asserts that she would have proffered the testimony of Lt. Wallis regarding

---

[5] In addition, Defendant maintains that permitting Plaintiff to admit post-trial evidence of alleged Code violations would require that Defendant have additional time to develop a defense regarding the so-called discretionary function exception to the FTCA. (*Id.* at 4-5, citing *Schuyler*, 987 F. Supp. at 841.) The court's order today will provide Defendant with ample time to develop this and other legal theories.

8

Defendant's awareness of an "unsafe condition" but for the parties' alleged agreement that liability was not at issue. (*Id.* at 7.)[6] Defendant does not respond to this assertion.

Plaintiff may well face an uphill battle to prove that Defendant was negligent. This court already noted evidence in the record of Plaintiff's own carelessness. *Luna*, 2003 WL 21196227, at *14. Furthermore, Defendant has raised the specter of a complete bar to Plaintiff's ability to recover for violations of a building code. Nevertheless, because the court concludes Plaintiff was under a good faith misapprehension concerning the scope of the bench trial, the court is unwilling to enter judgment without permitting Plaintiff some further opportunity to meet her burden on proving liability.

## CONCLUSION

For the foregoing reasons, the court re-opens the instant litigation for the sole purpose of hearing evidence on the issue of Defendant's liability. Plaintiff's motion to alter or amend order (Doc. 35-1) is granted. Status conference is set for Tuesday, January 27, 2004, at 9:00 a.m. The court directs the parties to meet prior to that date to discuss the possibility of settling this dispute.

ENTER:

Dated: January 14, 2004

REBECCA R. PALLMEYER
United States District Judge

---

[6] In addition, Plaintiff states that Wallis would have testified regarding Defendant's subsequent corrective measures to prevent future safety problems like Plaintiff's. (*Id.*) Evidence of subsequent remedial measures to enhance safety, however, is inadmissible to establish negligence. FED. R. EVID. 407; *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1018 (7th Cir. 2000).

9