# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1329 | **DATE** | 10/15/2004 |
| **CASE TITLE** | Patricia A. Luna vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The court finds in favor of the United States on the merits of this case. Defendant's motion in limine to exclude Plaintiff's trial exhibits which were never disclosed prior to trial (50-1), Defendant's motion in limine to exclude Plaintiff's proposed trial exhibit 6 and 7 (52-1) are both granted. Defendant's motion in limine to exclude Plaintiff's trial exhibits 4 and 5 dealing with building codes (51-1) is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

number of notices: 2
OCT 18 2004 date docketed
Document Number: 54
Notices mailed by judge's staff. ✓
date mailed notice 10/15/2004
courtroom deputy's initials: ETV

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA A. LUNA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 1329 |
| ) | |
| UNITED STATES OF AMERICA, ) | Judge Rebecca R. Pallmeyer |
| Department of the Navy, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
OCT 18 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Luna was addressing a group of 200 Naval recruits in a training room designed to look like a Navy ship in water when she fell off the three-foot simulated deck area and injured her knee. Luna, an employee of Resource Consultants, Inc. ("RCI"), recovered $20,706.40 on a workers' compensation claim in December 1998. In this lawsuit, she seeks an additional $125,000 in damages from the United States of America, Department of the Navy. Luna claims that Defendant is liable for her injuries under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, because it was negligent in failing to place a barrier at the edge of the drop-off; failing to warn Luna of the drop-off; and failing to train its personnel to properly warn people entering the room about the drop-off. For the reasons set forth here, the court finds in favor of Defendant.

## PROCEDURAL HISTORY

Before addressing the merits of this dispute, the court pauses to review its complicated procedural history. In pre-trial and trial phases of this case, both parties devoted most of their attention to the issue of whether Defendant was protected from liability under the FTCA by virtue of its status as a "borrowing employer" under the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq. See Luna v. United States, Dep't of Navy*, No. 00 C 1329, 2001 WL 664445 (N.D. Ill. June 13, 2001) ("*Luna I*"); *Luna v. United States, Dep't of Navy*, No. 00 C 1329, 2001 WL

54

1512530 (N.D. Ill. Nov. 28, 2001) ("*Luna II*"). Specifically, the IWCA provides that a workers' compensation claim is the exclusive remedy available when the employee of a "loaning employer" is injured while performing work for a "borrowing employer." See 820 ILCS 305/1(a)(4); *Belluomini v. United States*, 64 F.3d 299, 302 (7th Cir. 1995) (IWCA applies to loaned employees, and loaning employer and borrowing employer "share the immunity from tort liability conferred by the Act"). The government moved for summary judgment on this defense, but the court denied that motion. See *Luna I*, 2001 WL 664445. The government sought reconsideration, but the court adhered to its conclusion that there were disputes of fact concerning Plaintiff's training and supervision, see *Luna II*, 2001 WL 1512530, and set the case for trial.

Following a bench trial, the court held that Defendant did not qualify as a borrowing employer because Luna was supervised, trained, hired, and paid by RCI; only RCI had the power to fire her; Defendant had little to do with Luna or the manner in which she performed her job responsibilities; and the contract between Defendant and RCI stated that Defendant was not to be involved in the day-to-day activities of RCI employees. See *Luna v. United States, Dep't of Navy*, No. 00 C 1329, 2003 WL 21196227, at *12 (N.D. Ill. May 21, 2003) ("*Luna III*"). The court nevertheless found in favor of Defendant on the merits, explaining that

> [t]he court is unable to conclude that Defendant owed Plaintiff a duty to warn her about the edge of the platform. It seems more likely to the court that Plaintiff, caught up in her presentation and perhaps overwhelmed by the size of her audience, simply forgot about the edge of the platform and stepped back too far. Therefore the court finds the Defendant not liable for Plaintiff's unfortunate accident.

*Id.* at *14.

This time, it was Plaintiff who sought reconsideration. She moved pursuant to FED. R. CIV. P. 59 and 52 to alter or amend the judgment, arguing that the parties had previously agreed that liability was uncontested and that the sole issue for trial was whether Defendant qualified as a borrowing employer. In support of this motion, Luna cited a February 10, 2003 letter from her attorney, David Kupets, to Assistant U.S. Attorney Ann Wallace, stating:

2

> Enclosed you will find the deposition designations for those witnesses identified by the plaintiff. There is one exception. We designated Lt. Christian Wallis in our original designation. *However, it is my understanding that Patricia's fall and circumstances of her fall (including the condition of the trainer area) will not be contested for purposes of our bench trial, i.e., we are not disputing that the condition of the room was a cause of her injuries.* If that is true, his testimony does not add anything to the case. If my understanding is incorrect, please let me know as soon as possible, otherwise, we do withdraw Lt. Wallis as a witness.[1]

(Ex. A to Plaintiff's Motion to Alter or Amend Order of May 21, 2003, at 1) (emphasis added). According to Luna's attorney, Defendant never responded to this letter. But for this silence, Mr. Kupets asserted, he would have deposed certain Navy personnel, submitted testimony regarding the fall, and disclosed a Rule 26 expert to present evidence on the issue of liability (all, presumably, between February 10, the date of his letter, and the February 21 trial date). *See Luna v. United States, Dep't of Navy*, No. 00 C 1329, 2004 WL 144131, at *3 (N.D. Ill. Jan. 16, 2004) ("*Luna IV*").[2] Defendant did not address this letter in its briefs opposing the motion to amend, which led the court to infer that Defendant "was not prepared to deny liability at the bench trial." *Id.* at *4. Defendant has since reminded the court that during oral argument on August 8, 2003, counsel did deny that she entered into any agreement not to contest liability, claiming that the parties had a conversation to that effect shortly after Mr. Kupets sent the February 10, 2003 letter. (Transcript of Proceedings dated 8/8/03, at 4). The court withdraws its inaccurate statement and apologizes to counsel for the error.

In any event, the court found that Luna was under a good faith misapprehension concerning the scope of the bench trial and agreed to re-open the litigation (but not discovery) for the sole

---

[1] Luna does not specify what she expected Lieutenant Wallis to say in his testimony. Lieutenant Wallis was deposed on September 19, 2002, however, and testified that though he was in the room at the time of the accident, he did not personally see Ms. Luna fall. (Wallis Dep., Ex. 4 to Def. Supp., at 18-19.) He also stated that he thought the drop-off was obvious. (*Id.* at 37.)

[2] This opinion was amended on April 1, 2004 to correct a typographical error in the date on the signature page. *See Luna v. United States, Dep't of Navy*, No. 00 C 1329, 2004 WL 726028 (N.D. Ill. Apr. 1, 2004).

3

purpose of hearing evidence on the liability issue. *Luna*, Minute Order of 2/17/04 (Docket No. 46). The court has now reviewed that evidence and, for the reasons set forth below, enters judgment in favor of the United States.

## FACTUAL BACKGROUND

The court will assume the reader's familiarity with the court's earlier opinions in this case but will review background information pertinent to the remaining dispute. RCI entered into a five-year contract with Defendant, under which RCI employees provided administrative services in support of the students and staff at Defendant's Service School Command ("SSC") located at the Naval Training Center in Great Lakes, Illinois. Luna, an RCI employee, worked as a Senior Administrative Assistant in the Seamen Apprenticeship Training Division of the SSC. On December 23, 1997, Luna was assigned to deliver a "departure brief," a speech to a group of Naval recruits scheduled to leave the training center. Such briefings are normally attended by about 50 recruits and take place in a classroom. On this day, however, Defendant expected approximately 200 recruits to attend the session and therefore moved the briefing from the classroom to the training area, or "trainer."[3] *Luna*, 2004 WL 144131, at *1. The training area is a room constructed to resemble a Navy ship at a pier. One part of the room forms the deck of the ship; it is painted gray and has seating for people receiving instruction. At the edge of the deck is a three-foot drop-off to the simulated "water" below, which is painted blue. On the day of Luna's presentation, there was no rope or other barrier marking the edge of the deck before the drop-off.[4]

---

[3] It is unclear who specifically ordered the move to the training area.

[4] After Luna's accident, the Navy placed a rope barrier at the edge of the deck. Defendant acknowledges that it could have supplied the rope barrier prior to the accident and that it had sufficient ownership and control over the facility to take such a corrective measure. (Motion in Limine to Exclude Evidence of Subsequent Remedial Measures, at 1-3.) Evidence of this subsequent remedial measure to enhance safety is thus inadmissible to establish negligence. FED. R. EVID. 407; *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1018 (7th Cir. 2000).

4

Luna had never given a brief in the training area before. The deck was crowded with students and during the first few minutes of Luna's talk, she stepped backward off the deck and fell onto the blue concrete "water" area. Robert Stoneking, a Division Functional Supervisor with RCI and Luna's immediate supervisor, testified that before the incident it had never occurred to him that there should be a rope at the edge of the platform to prevent someone from stepping off of it. He stated,

> I thought anybody with any common sense walks out there and sees that drop-off, they know about it. And if they're anywhere close, they're not going to, even though there is no line, they're not going to back off and fall in there. Any reasonable – but I can't say for her, what she was thinking of. She got so wrapped up, involved in her thing that she just – and she told me later, "they all said, 'Mrs. Luna, look out.'"

(Stoneking Dep., at 18-19.) Stoneking also observed that the accident may still have occurred, even had there been a rope line at the edge of the platform, if someone had stepped backward, as Luna did, without looking. (*Id.* at 19.)

Luna claims that as a result of the fall, she sustained a torn meniscus in her knee and underwent physical therapy and ultimately surgery. She claims further that she continues to experience swelling, numbness and pain in the knee and is no longer able to play softball. Luna originally sought $150,000 in damages but has now revised that figure, without explanation, to $125,000. (Pl. Mem., at 8.)[5]

## DISCUSSION

The FTCA provides a remedy for personal injury caused by the negligent or wrongful act or omission of government employees while acting within the scope of employment. The government is liable in the same manner and to the same extent as a private individual in accordance with the law of the state where the cause arose. 28 U.S.C. §§ 1346(b), 2671, 2674. In Illinois, where this case arose, a plaintiff must establish that the defendant owed her a duty of

---

[5] Plaintiff's Trial Memorandum on the Evidence of Defendant's Negligence is cited as "Pl. Mem., at __."

care; the defendant breached the duty; and the plaintiff suffered an injury proximately caused by the breach. *Bajwa v. Metropolitan Life Ins. Co.*, 208 Ill.2d 414, 421, 804 N.E.2d 519, 526 (2004).

Defendant admits that it "owed a duty of reasonable care to entrants on the state of their premises." (Answer ¶ 11.) The government argues, however, that it did not have a duty to protect Luna from the drop-off because it was open and obvious and, thus, her injury was not reasonably foreseeable. Even if it was negligent, Defendant asserts, Luna's own negligence negates any liability on Defendant's part. Luna insists that Defendant owed her a duty to warn and to guard against unsafe conditions, and is liable for failing to comply with local custom and practice to place a barrier at the edge of any three-foot drop.

## A. Defendant's Negligence

Courts in Illinois consider the following factors in determining the existence of an obligation to act reasonably for the protection of a plaintiff: (1) the foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against such an injury; and (4) the consequences of placing that burden on the defendant. *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 90, 811 N.E.2d 364, 371 (1st Dist. 2004) (citing *Sollami v. Eaton*, 201 Ill.2d 1, 17, 772 N.E.2d 215, 224 (2002)). Injury is generally not foreseeable when there is an open and obvious danger: "[T]he law generally considers the likelihood of injury slight when the condition in issue is open and obvious because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks." *See Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 456, 665 N.E.2d 826, 836 (1996). A danger is considered open and obvious if "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Prostran*, 349 Ill. App. 3d at 85-86, 811 N.E.2d at 368 (quoting *Diebert v. Bauer Bros. Constr. Co.*, 141 Ill.2d 430, 435, 566 N.E.2d 239, 241 (1990)).

6

When a danger is open and obvious, a defendant does not have a duty to warn individuals about the danger unless one of two exceptions applies: (1) the "distraction" exception; or (2) the "deliberate encounter" exception. *Id.* at 90, 811 N.E.2d at 371. Under the distraction exception, a property owner owes a duty of care with respect to an open and obvious danger "if it is reasonably foreseeable that the plaintiff's attention might be distracted so that she would not discover the obvious condition." *Id.* at 88, 811 N.E.2d at 370. The "deliberate encounter" exception to the open and obvious rule provides that "a duty is imposed when a possessor of land 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" *Id.* at 89, 811 N.E.2d at 371 (quoting Restatement (Second) of Torts § 343A, Comment f, at 220). This exception usually applies where the injured party is under economic compulsion to encounter the danger, such as a worker acting as part of his employment obligations. *Id.*

Defendant argues that the drop-off from the ship deck to the simulated "water" below was "made obvious by clear differences in color as well as by the relation of a ship to water that the drop-off imitates." (Def. Supp., at 6.)[6] Defendant claims that it could not have anticipated that Luna would injure herself because it was not reasonably foreseeable that she would be distracted from the obvious drop-off while lecturing the students. (*Id.* at 6-8.) In support of this argument, Defendant cites only a case it must distinguish from this one, *Boll v. Chicago Park Dist.*, 249 Ill. App. 3d 952, 620 N.E.2d 1082 (1st Dist. 1991), in which the plaintiff was pushed over the railing of a concourse by a crowd pressing into a Chicago Bears football game. *Id.* at 955, 620 N.E.2d at 1084. The defendant argued that the danger was obvious but the court found that that did not absolve the defendant of liability. First, the plaintiff had "the major distraction of crowding such that his movements were literally controlled by the force of the crowd." *Id.* at 960, 620 N.E.2d at 1087.

---

[6] The United States' Supplemental Trial Brief in Support of a Finding of No Liability by the United States is cited as "Def. Supp., at __."

7

In addition, the defendant knew that "at every game some fans proceeded to encounter the open-air railings to escape the crowds, despite the risk." *Id.* Defendant argues that *Boll* is distinguishable from this case because the crowd facing Luna was controlled and sitting, and there is no evidence that anyone else had ever fallen over the ledge prior to Luna. (Def. Supp., at 7-8.)

Luna does not argue that she was unaware of the drop-off in the training area. She insists that Defendant nevertheless owed her a duty to warn and to guard against defective conditions on the property, and that Defendant breached those duties by failing to follow custom and practice in erecting barriers at the edge of the drop-off as set forth in local building codes and safety regulations. Luna cites Executive Order 12196, Occupational Safety and Health Programs for Federal Employees (February 26, 1980), which she says "requires federal agencies to adopt the same level of safety and follow the same standards as required by the private sector." (Pl. Mem., at 4) (citing Interagency Agreement between the United States Department of the Navy and the United States Department of Labor - OSHA; OSHA Instruction FAP 1.3 (May 17, 1996).) Presumably as evidence of those private-sector standards, Luna cites the language of several building codes and other standards. First, she notes that § 207.A.8 of the 1981 Building Code (the "Code") published by the Suburban Building Officials Conference, a chapter of the Building Officials Conference Association ("BOCA"), states in relevant part, "Porches, balconies or raised floor surfaces located more than 30 inches above the floor or grade below shall have guardrails not less than 36 inches in height." In addition, Luna cites § 75-1 of the 1987 City of Chicago Building Code, which similarly requires guardrails at the edge of "every floor . . . which is at a height of more than two feet above the floor."[7]

---

[7] The relevance of other provisions Luna has cited is less clear. For example, she cites the U.S. Army Corps of Engineers "Safety and Health Requirements Manual," which states that "[w]here there is a horizontal or vertical break of 48 cm (19 in) or more in a route of access, a stairway, ladder, ramp, or personnel hoist shall be provided." The court is uncertain that a "route of access" is at issue here. In addition, Luna cites the International Building Code 2000 and 29 C.F.R. § 1926.34, both of which require that employers provide adequate means of egress, (Pl.

8

Luna has also submitted an April 13, 2004 report from Frank Burg, a Certified Safety Professional with Accident Prevention Corporation,[8] stating that the Navy violated the above provisions, including "Executive Order 1219[6], OSHA, NFPA, BOCA, ANSI, NSC, as well as, customs and practices within the private sector and the federal government."[9] (Ex. 11 to Def. Supp.) Specifically, Mr. Burg asserts that Defendant "failed to implement, communicate, monitor and enforce an effective safety program at the [SSC]. Such a safety and health program would have assured that [the] floor opening would be guarded to prevent falls." (*Id.* at 1.) Mr. Burg also states that Defendant "failed to assure proper life safety and emergency evacuation plan. An unguarded floor opening approximately three feet above ground level is a potentially deadly hazard in the event of a fire or other emergency." (*Id.* at 2.)

Defendant objects to this evidence on several grounds. First, Defendant seeks to exclude the 1981 Code and the City of Chicago Building Code (Exs. 4 and 5 to Pl. Mem.), arguing that 40 U.S.C. § 3312(e) shields the government from liability for its failure to comply with building codes. Section 3312 requires buildings constructed by the General Services Administration ("GSA") to comply with "one of the nationally recognized model building codes and with other applicable nationally recognized codes, including electrical codes, fire and life safety codes, and plumbing codes," 40 U.S.C. § 3312(b), but specifically provides that no action may be brought against the

---

Mem., at 4-5), but there is no evidence that Luna was injured due to an inability to exit the training area. though there is no evidence that Luna was injured due to an inability to exit the training area.

[8] Accident Prevention Corporation "specializes in safety education, OSHA style safety audits, safety program review and development, loss control analysis, and cost control techniques. We are experts in occupational health and safety for general industry and construction, behavior-based safety, ergonomics, and environmental topics." http://www.safetyman.com.

[9] Presumably, OSHA is the Occupational Safety and Health Administration; NFPA is the National Fire Prevention Association; ANSI is the American National Standards Institute; and NSC is the National Safety Council.

Federal Government "for failure to meet the requirements of subsection [(b)] . . ." 40 U.S.C. § 3312(f).

No controlling authority explains the application of § 3312 in this case. Defendant points to *Schuyler v. United States*, 987 F. Supp. 835 (S.D. Cal. 1997), in which a pedestrian was thrown over the guardrail of a three-story pedestrian ramp at a U.S. port of entry during a brawl. *Id.* at 837. The pedestrian sued the United States under the FTCA, arguing that the government was negligent in designing, constructing, and maintaining the pedestrian ramp. *Id.* Specifically, the guardrail rose only 38 inches above the inclined areas rather than the 42 inches required under the Uniform Building Code. *Id.* at 838. The court held that regardless of whether the guardrail complied with the building code, 40 U.S.C. § 619(e) (the former citation for 40 U.S.C. § 3312(f)) shielded the government from liability, "even where it would otherwise be liable under the FTCA." *Id.* at 844. The court found that the statute "expresses a clear intent on the part of Congress to shield defendant from liability regarding decisions made with respect to the construction and modification of buildings by the GSA. As such, defendant cannot be liable for its decisions regarding the height of the guardrail." *Id.* at 845.

Luna asks the court to disregard *Schuyler* in favor of the views of another California federal court. In *Greene v. United States*, 207 F. Supp. 2d 1113 (E.D. Cal. 2002), the plaintiff was injured when, upon backing up to take a picture of his wife in the courtyard of the Sacramento federal courthouse building, he tripped over small figurines placed in the courtyard as part of the artwork commissioned by the GSA. *Id.* at 1115. The plaintiff sued the United States under the FTCA for negligent placement of the art. The government claimed total immunity under § 619(e) but the court found that "the statute does not immunize the United States from all and every construction defect no matter how one seeks to remedy the defect." The court interpreted the statute to preclude actions based on a failure to follow the building codes, "i.e., no negligence per se finding is available," but "[a]ctions based upon common law negligence, such as the FTCA, are not

10

referenced, and do not depend upon a finding that a building code violation occurred. Negligence can be actionable regardless of compliance with a building code." *Id.* at 1123-24. The court thus declined to dismiss or grant summary judgment on the complaint. *Id.* at 1124.

As this court reads *Greene*, the government is not completely immune from liability for negligence under the FTCA when a case involves building code violations, but a plaintiff must still demonstrate negligence apart from a failure to comply with those codes. Luna concedes that the government is not liable simply because it violated the building codes. Her theory is that the building codes are "evidence of the custom and practice for the standards applied to a three foot drop on a platform being used as an assembly room." (Pl. Mem., at 3.) *See Flynn v. Golden Grain Co.*, 269 Ill. App. 3d 871, 883-84, 646 N.E.2d 1289, 1297 (1st Dist. 1995) (quoting *Tenenbaum v. City of Chicago*, 60 Ill.2d 363, 375-76, 325 N.E.2d 607, 615 (1975) ("evidence of regulations, standards and building codes may be admitted to aid the finder of fact in deciding the standard of care in a negligence action")). Further evidence of such custom and practice, Luna says, can be found in Mr. Burg's report; he relies on, among other things, the building codes, the Army Corps of Engineers Manual, and the OSHA regulations in concluding that Defendant failed to follow local custom and practice when it neglected to place a barrier in front of the drop-off.

Defendant objects to the court's consideration of Mr. Burg's opinion on the ground that he was never disclosed as an expert witness pursuant to FED. R. CIV. P. 26(a)(2) and Defendant never had the opportunity to submit any rebuttal reports. (Motion in Limine Ex. 11 ¶¶ 5-7.)[10] The court concludes that this objection should be sustained. Luna concedes that the report is "not evidence" but suggests the court is free to consider it as "the identification of those representations made by plaintiff in open court regarding the custom and practice when building a platform in a room with

---

[10] Defendant's Motion in Limine to Exclude Plaintiff's Trial Exhibits Which Were Never Disclosed Prior to Plaintiff's Trial Memo is cited as "Motion in Limine Ex. 11 ¶ ___."

11

a three foot drop off." (Pl. Supp. ¶ 2; Pl. Mem., at 7 n.1.)[11] Presumably, Luna is referring to representations made by her attorney regarding alleged violations of "building codes and the codes and OSHA codes." (Transcript of Proceedings dated 6/12/03, at 7.) In the court's view, if Mr. Burg's report is not evidence, it is also not appropriately considered as advocacy.

Even apart from the building codes, OSHA regulations, and Army Corps of Engineers Manual, Luna asserts she has established the government's liability under common law negligence principles. She cites *Shaffer v. Mays*, 140 Ill. App. 3d 779, 489 N.E.2d 35 (4th Dist. 1986), *Ward v. KMart Corp.*, 136 Ill.2d 132, 554 N.E.2d 223 (1990), and *Cihon v. Cargill, Inc.*, 293 Ill. App. 3d 1055, 689 N.E.2d 153 (1st Dist. 1997), for the proposition that property owners are responsible for injuries plaintiffs suffer when they encounter "unguarded, unbarricaded floor openings and drop offs." (Pl. Mem., at 7.) The plaintiff in *Shaffer* was a home insulation contractor helping to remodel a house owned by the defendant. *Id.* at 780-81, 489 N.E.2d at 36. He assisted in cutting an opening in the floor for a stairwell leading to the basement and, some days later, stepped backwards into the uncovered hole while moving trusses for the roof. *Id.* at 781, 489 N.E.2d at 36. The plaintiff sustained severe injuries and sued the defendant for negligence. The court agreed that the plaintiff was aware of the open and obvious hole but found that he was distracted while moving a heavy and awkward object into place, a task that required him to direct his attention to co-workers above him rather than to the floor. *Id.* at 782, 489 N.E.2d at 37. The court thus affirmed a jury finding of negligence. *Id.* at 783, 489 N.E.2d at 38. See also *Ward*, 136 Ill.2d 132, 554 N.E.2d 223 (duty of care owed to plaintiff under distraction exception; defendant could reasonably have been expected to foresee that plaintiff would block his vision with a large mirror he had purchased and fail to see a concrete post outside the entrance to defendant's store); *Cihon*, 293 Ill. App. 3d 1055, 689 N.E.2d 153 (under deliberate encounter exception, jury could reasonably

---

[11] Plaintiff's Supplemental Trial Memorandum in Response to Defendant's Three Additional Motions in Limine is cited as "Pl. Supp. ¶ __."

12

have concluded that the plaintiff, who fell off a plank while working at a construction site, reasonably determined that the advantages of encountering the obvious danger outweighed the apparent risk).

The court finds the cases cited by Luna distinguishable in that she was not carrying or moving any large, unwieldy objects, and there is no claim that she deliberately approached the drop-off or made any risk assessment in that regard. There is also no evidence that anyone had ever fallen off the deck prior to Luna's accident. In *Boll*, the plaintiff's movements were controlled by the force of the crowd and defendant knew that at every game, fans proceeded to the open-air railings to escape the crowds. 249 Ill. App. 3d at 960, 620 N.E.2d at 1087. Here, in contrast, Plaintiff was speaking to a crowd of controlled, seated recruits. The court recognizes that in at least some cases not cited by Luna, Illinois courts have suggested that more minor distractions, such as the one in this case, may suffice to impose a duty on a landowner. *See Rexroad v. City of Springfield*, 207 Ill.2d 33, 796 N.E.2d 1040 (2003) (reversing summary judgment in favor of city where high school football team helper testified that he was focused on carrying a football helmet to a player when he was injured by falling into an open and obvious hole; "[i]t was reasonably foreseeable that students may fail to avoid the risk posed by the hole by becoming distracted or momentarily forgetful"). *See also Clifford v. Wharton Business Group, L.L.C.*, No. 1-03-2932, 2004 WL 2192558 (Ill. App. 1st Dist. Sept. 30, 2004) (reversing summary judgment for defendant; "[a]s *Rexroad* illustrates, all that is required is the defendant's awareness that those in proximity to the open and obvious hazard are likely to become distracted in some way and forget about the presence of the hazard," [and] "this standard has a low threshold"). Neither party cited this case, however, and unlike the plaintiff in *Rexroad*, Ms. Luna offered no testimony at trial suggesting that she was distracted when she fell. (Transcript of Proceedings dated 2/21/03, at 62-63) ("I saw a mass of students sitting all over that deck"; "I turned toward the students who were sitting there

13

facing me"; and after "introduc[ing] myself to them" and saying "a couple of more words . . . I fell off of a wall").

Notwithstanding Luna's belief that Defendant would not contest liability, the court is troubled by the fact that at no point prior to or during trial did she ever notify the court of this belief, present a stipulation concerning the matter, or otherwise attempt to make a record of the alleged agreement. (See Pl. Mem., at 6.) Equally troubling is the fact that Defendant singly pursued a weak "borrowing employer" defense without ever raising the issue of nonliability, also without explaining its silence on the issue.[12] It is Ms. Luna, however, who bears the burden of proof at trial. Without an admissible expert report on the custom and practice with respect to three-foot drop-offs in public assemblies such as the one at issue here, the court cannot say that the 1981 Code's "Rules and Regulations for the Construction, Alteration, Repair and Conversion of Buildings for *Residential* Purposes," the 1987 City of Chicago Building Code, much less the Army Corps of Engineers Manual or the OSHA regulations on "means of egress" establish the appropriate standard of care in this case. Significantly, while custom is admissible as evidence of the appropriate standard of care, it is not conclusive. See *Darling v. Charleston Community Mem'l Hosp.*, 33 Ill.2d 326, 331, 211 N.E.2d 253, 257 (1965) (quoting Prosser on Torts, 3d ed., at 331) ("in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk"); *Denniston v. Skelly Oil Co.*, 47 Ill. App. 3d 1054, 1068, 362 N.E.2d 712, 723 (3d Dist. 1977) ("[t]hat conduct does or does not conform to a custom is merely a circumstance to be considered with other circumstances in determining whether due care has been exercised").

Even assuming the building codes and regulations established a local custom to erect a barrier at the edge of a three foot drop-off, they say nothing about a duty to warn, nor do they

---

[12] The court suggests that the government's apparent reliance on a defense about which the court had expressed its doubts in writing, more than once, was risky litigation strategy.

14

address the situation presented here where Luna confronted an open and obvious danger. Indeed, Luna's own supervisor testified that the drop-off from the deck was obvious and that Luna told him "they all said, 'Mrs. Luna, look out.'" (Stoneking Dep., at 18-19.) The court concludes that Luna has not met her burden of showing that Defendant owed her a duty to warn her about, or to place a barrier at the edge of, the drop-off. Luna knew about the obvious drop-off and has not established that she was distracted, or that it was reasonably foreseeable that she would become distracted while giving her lecture, and fall off the deck.

**B.    Plaintiff's Negligence**

Having determined that Luna did not meet her burden of establishing that Defendant's negligence caused her injuries, the court need not address Defendant's alternative argument that Luna's own negligence precludes any recovery in this case. (Def. Supp., at 11-12) (citing 735 ILCS 5/2-1116(c) ("[t]he plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury"); Board of Trustees of Community College Dist. No. 508 v. Coopers & Lybrand, 208 Ill.2d 259, 267, 803 N.E.2d 460, 465 (2003)). The court notes only that Luna was aware of the obvious drop-off; she apparently forgot about the edge of the platform as she was giving her presentation; and people yelled out to her to watch her step. Significantly, though Luna presumably believes that she was not contributorily negligent at all, she did not present any specific evidence on that issue.

## CONCLUSION

For the reasons stated above, the court finds in favor of the United States on the merits of this case. Defendant's Motion in Limine to Exclude Plaintiff's Trial Exhibits Which Were Never Disclosed Prior to Trial (Docket No. 50-1), Defendant's Motion in Limine to Exclude Plaintiff's Proposed Trial Exhibit 6 and 7 (Docket No. 52-1) are both granted. Defendant's Motion in Limine

to Exclude Plaintiff's Trial Exhibits 4 and 5 Dealing with Building Codes (Docket No. 51-1), is denied as moot.

ENTER:

Dated: October 15, 2004

REBECCA R. PALLMEYER
United States District Judge